United States District Court
Southern District of Texas
**ENTERED**
November 30, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Eliazar E. Rodriguez, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-20-2563 |
| | § | |
| Kilolo Kijakazi,[1] | § | |
| Acting Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant.* | § | |

# MEMORANDUM AND RECOMMENDATION

Eliazar E. Rodriguez appeals the Social Security Administration (SSA) Commissioner's final decision denying his application for social security benefits. Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 16) and Defendant's Motion for Summary Judgment (D.E. 21.) Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

## 1. Procedural Posture

Rodriguez applied for supplemental security income (SSI) on June 22, 2016. (Tr. 251.) Rodriguez claimed that he became disabled on July 1, 2010, due to,

---

[1] Andrew Saul was the Commissioner of the Social Security Administration (SSA) when Eliazar E. Rodriguez filed this case but no longer holds that position. Kilolo Kijakazi is Acting Commissioner of the SSA and is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d).

among other things,[2] heart problems, diabetes, high blood pressure, high cholesterol, sleep apnea, carpal tunnel syndrome (CTS), a shattered right heel, and severe depression. (Tr. 280.) Rodriguez was born on March 31, 1962, and was fifty-four years old on the filing date. (Tr. 251, 276.)

Rodriguez's alleged onset date was six years before he filed his application, but the earliest he could receive SSI benefits under the regulations was the month following the month during which he filed the application. *See* 20 C.F.R. § 416.335 (2016). Thus, the relevant period under consideration is June 22, 2016, the date of his application, through November 26, 2019, the date of the Administrative Law Judge's (ALJ) decision.

Rodriguez last worked in 2010 as a retail assistant manager. (Tr. 271, 289.) Prior to holding that job, he worked as a bank manager and fast-food assistant manager. (Tr. 271, 289.)

The SSA denied Rodriguez's application on October 13, 2016. (Tr. 103–06.) Rodriguez sought reconsideration on November 18, 2016. (Tr. 108–09.) Rodriguez's application was again denied on January 10, 2019. (Tr. 112–15.) On January 15, 2019, Rodriguez requested a hearing by an ALJ. (Tr. 116–18.)

---

[2] For Rodriguez's privacy, the court does not list every claimed impairment.

2

The ALJ, William Sharp, held a hearing on September 24, 2019, in Houston, Texas. (Tr. 28–57.) The ALJ issued a decision on November 26, 2019, finding that Rodriguez was not disabled. (Tr. 7–27.) The Appeals Council denied Rodriguez's request for review on May 12, 2020. (Tr. 1–4.)

Rodriguez timely filed a complaint in federal court to appeal the Commissioner's final decision when he filed an application to proceed in forma pauperis on July 17, 2020. *See Rodriguez v. Saul*, H-20-2563, D.E. 1 (S.D. Tex. July17, 2020).

## 2. Hearing

At the hearing on September 24, 2019, the ALJ heard testimony from Rodriguez and a vocational expert (VE). (Tr. 35–57.) Rodriguez was represented by an attorney. (Tr. 29.)

Rodriguez testified about his symptoms, limitations and medical treatments related to diabetes, depression, social anxiety, and sleep apnea. (Tr. 37–49.) He also identified problems with his right foot due to a heel fracture. (Tr. 39–40, 42, 46, 49.) Rodriguez stated that he had initially been told by doctors that he could not undergo surgery on his heel because he had high blood pressure. (Tr. 40.) He also testified that doctors later declined to perform surgery altogether because he suffered a heart attack. *Id.* He testified that he experienced prolonged swelling in his right foot and, as a result, claimed he could not walk or stand for very long. (Tr. 42.)  Rodriguez

3

testified that he used a cane or walker (Tr. 43.) He also testified that he has fallen in the past due to balance issues due to his heel fracture. (Tr. 46.)

Rodriguez testified about his symptoms of CTS. (Tr. 40.) When asked how CTS affected his ability to use his fingers and hands, he said he had a "tendency to drop stuff and things [fell] out of [his] hand." *Id.* Rodriguez testified that his long-term partner completed most of the household chores and the cooking. (Tr. 41.)

Rodriguez also testified that he has problems with lifting, squatting, bending, standing, reaching, walking, kneeling, concentrating, climbing the stairs, using his hands, and getting along with others. (Tr. 43.) He testified that he weighed 357 pounds at the time of the hearing and that he had a tendency to overeat as a way to deal with his depression. (Tr. 44–45.)

The VE characterized Rodriguez's past retail assistant manager work as skilled and stressful. (Tr. 53–54.) The ALJ asked the VE if a hypothetical individual of Rodriguez's age, educational background and work experience who was limited to medium duty work could perform any job that existed in significant numbers in the national and regional economy if he was subject to these additional limitations:

> [The individual] can occasionally climb ladders, ropes, and scaffolds; the person can only frequently walk on ramps and stairs, kneel and crawl; the person can only frequently handle with the bilateral hands; the person may need to alternate walking and standing with sitting for 10 minutes in the morning and in the afternoon, in addition to the normal breaks; the person may need to take pain, anti-inflammatory, diabetes, and psychological

4

> medications while at work . . . . [M]ust observe hazard precautions from heights, open flames, dangerous machinery and exposed electrical currents; the person must avoid concentrated exposure to dust, gas, fumes, and industrial inhalant irritants; the person is limited to frequent interaction with supervisors and coworkers, and occasional interaction with the public; the person is limited to low stress work setting and tasks[,] that is[,] no forced production paced or assembly line type jobs; the person can adapt to changes in work methods and routines no more frequently that once every two weeks; the hypothetical claimant is limited to detailed, but not complex, instructions and tasks; and finally, the person might be off-task up to 10 percent of the day due to physical pain and discomfort symptoms, and depression symptoms interfering with concentration, persistence, and pace.

(Tr. 52–53.) The VE testified that such an individual would not be able to perform Rodriguez's past relevant work. (Tr. 53–54.) The VE identified three jobs at the medium, unskilled level that such a person could perform: janitor, linen clerk, and laboratory equipment cleaner. (Tr. 54.) When questioned by Rodriguez's attorney, the VE testified that, if such an individual was "limited to two hours a day on [their] feet, . . . unable to deal with normal pressures in a competitive work setting[,]" there would be no jobs available. (Tr. 55.) The VE also testified that, if such an individual was off-task twenty percent of the time during the workday or missed two and a half workdays a month due to physical or mental health issues, that individual would not be able to maintain and sustain any full-time or competitive employment. (Tr. 55–56.)

The ALJ issued his decision on November 26, 2019, finding that Rodriguez has not been disabled since June 22, 2016, the date the application was filed. (Tr. 7–27.)

### 3. Legal Standards

The Social Security Act provides SSI to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. § 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 416.920(a)(4) (2016).

This court's review of the ALJ's disability determination is highly deferential, and the court asks only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citation omitted). "A decision is supported by substantial

evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 4. Analysis of the ALJ's Decision

#### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i) (2016). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 416.920(b) (2016).

The ALJ found that Rodriguez had not engaged in substantial gainful activity since the application date of June 22, 2016. (Tr. 12.) Rodriguez does not dispute this finding.

**B. Step Two**

At step two, the ALJ determines whether any of the claimant's impairments

is severe. 20 C.F.R. § 416.920(a)(4)(ii) (2016). An impairment is not severe "only if

it is a slight abnormality having such minimal effect on the individual that it would

not be expected to interfere with the individual's ability to work, irrespective of age,

education or work experience." *Salmond*, 892 F.3d at 817. (emphasis omitted)

(quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). A person who does not

have a severe impairment is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R.

§ 404.1520(c)); *see also* 20 C.F.R. § 416.920(c) (2016).

The ALJ found that Rodriguez had the following severe impairments:

"cardiac arrhythmia, diabetes, [CTS], calcaneal spurs, morbid obesity, and major

depressive disorder." (Tr. 12.) The ALJ stated that these impairments "significantly

limit[ed] the ability to perform basic work activities[.]" *Id.* The ALJ found, among

other things, that high blood pressure, high cholesterol, sleep apnea, and obesity[3]

were not severe impairments (Tr. 12–13.) Rodriguez does not dispute these findings.

**C. Step Three**

At step three, the ALJ determines if any of the claimant's severe impairments

meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. §

---

[3] Again, for Rodriguez's privacy, the court does not list all of his non-severe impairments. Moreover, the court notes that the ALJ listed Rodriguez's morbid obesity as a severe impairment, but then states that obesity is a non-severe impairment. The court concludes that the ALJ found obesity to be a severe impairment.

8

416.920(a)(4)(iii) (2016); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2016). If all the criteria of a Listing section are met or equaled, the claimant is considered disabled. 20 C.F.R. § 416.920(d) (2016).

The ALJ found that Rodriguez's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. (Tr. 13–15.) The ALJ appropriately considered Listing sections 1.02 (major dysfunction of a joint), 4.05 (recurrent arrhythmias), 11.14 (peripheral neuropathy), 12.04 (depression), and 12.06 (anxiety). *Id.* The ALJ also considered multiple other listing sections potentially implicated by Rodriguez's diabetes but found that the record did not support a finding that he met any of those listing sections. (Tr. 13.) Rodriguez does not dispute these findings.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 416.920(e) (2016); *see also Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)). An RFC assessment is a determination of the most a claimant can still do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.945(a)(1) (2016). "The RFC assessment must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The RFC determination is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2) (2016); *See Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012).

The ALJ determined that Rodriguez could perform "medium work" and determined that he had the RFC to:

> [O]ccasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs, kneel, and crawl; frequently handle with the bilateral hands; may need to alternate walking and standing with sitting for 10 minutes in the morning and the afternoon in addition to normal breaks; must observe hazard precautions from heights, open flames, dangerous machinery, and exposed electrical currents; must avoid concentrated exposure to dust, gas, fumes, and industrial inhalant irritants; is limited to frequent interaction with supervisors, coworkers, and occasional interaction with the public; is limited to low-stress work settings and tasks, i.e., no forced production pace or assembly line jobs; can adapt to changes in work methods and routines no more frequently than once every two weeks; is limited to detailed, but not complex instructions and tasks; and may be off task up to 10% of the day due to physical pain and discomfort symptoms and depressive symptoms interfering with concentration, persistence, or pace.

(Tr. 15, 19.) In reaching this finding, the ALJ considered objective medical evidence, opinion evidence, and all of Rodriguez's physical impairments. (Tr. 15–20.)

Rodriguez does not argue that the ALJ's RFC determination is incorrect. He does not cite to any medical or other evidence that the ALJ overlooked or

misinterpreted. Rodriguez's sole argument is that the ALJ failed to evaluate his morbid obesity and its effect on his RFC in accordance with Social Security Ruling (SSR) 19-2p.[4] (D.E. 16 at 8.) He also argues that the ALJ "selectively cited portions of the record and omitted consideration of important evidence [that his obesity had an adverse effect on his other impairments]." *Id.* at 6–9.

On May 20, 2019, the SSA published SSR 19-2p, which rescinded and replaced the guidelines for evaluating obesity under SSR 02-1p. SSR 19-2p applies only to applications filed on or after May 20, 2019. Thus, SSR 02-1p applies to Rodriguez's application filed on June 22, 2016. *See Liguez v. Kijakazi*, No. 4:20-CV-02798, 2021 WL 4943321, at *8 (S.D. Tex. Aug. 11, 2021), *report and recommendation adopted sub nom. Liguez v. Comm'r of Soc. Sec.*, No. 4:20-CV-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021). The court will consider Rodriguez's arguments under SSR 02-1p, but notes that the result would be the same under the newer Social Security Ruling.

SSR 02-1p recognizes that obesity, though not a listed impairment, can reduce an individual's occupational base for work activity in combination with other ailments. *Beck v. Barnhart*, 205 F. App'x 207, 211 (5th Cir. 2006) (citing SSR 02-1p, 2002 WL 34686281, at *5-7). Obesity is a risk factor for other impairments and

---

[4] 2019 WL 2374244.

11

can cause various functional limitations. *See* SSR 02-1p 2002 WL 34686281, at *3. Thus, an ALJ must perform "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.* at *4.

Here, the ALJ did not specifically analyze Rodriguez's obesity in formulating the RFC. Because Rodriguez did not list obesity as a basis for his disability in his application, (Tr. 280) the ALJ was under no obligation to consider it. *See Dunson v. Berryhill*, No. 7:17-CV-00001-BP, 2018 WL 1427107, at *3 (N.D. Tex. Mar. 22, 2018). It is therefore not clear that failure to articulate the effects of obesity on Rodriguez's ability to work constituted legal error. In any event, any error was harmless and does not warrant remand. *See Skarbek v. Barnhart,* 390 F.3d 500, 504-05 (7th Cir. 2004) (concluding that "any remand for explicit consideration of [the claimant's] obesity would not affect the outcome of this case" where, "although the ALJ did not explicitly consider [the claimant's] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."); *Johnson v. Astrue*, No. 3:10-CV-0246-D, 2010 WL 4722275, at *17 (N.D. Tex. Nov. 22, 2010) ("Although the ALJ did not explicitly articulate or rely on any cumulative effects of [the claimant's] obesity, the record indicates that her obesity was factored into the RFC determination.")

Although the ALJ does not specifically discuss Rodriguez's obesity, the administrative record reflects that the ALJ was aware of and considered Rodriguez's obesity in determining his RFC. The ALJ considered "morbid obesity" to be a severe impairment at step two. (Tr.12.) Rodriguez specifically discussed at the hearing his obesity and the problems it caused him. (Tr. 39–46.) He also discussed his recent gain of fifty pounds. (Tr. 44.) Moreover, many of the medical records the ALJ had before him noted Rodriguez's obesity. *See, e.g.* Tr. 468 (noting that Rodriguez had a 49.5 inch waist in 2009); Tr. 459 (noting Rodriguez's BMI to be 39.8 on May 10, 2012); Tr. 1234 (noting Rodriguez weighed 273 pounds on March 20, 2017). The court cannot say that the ALJ overlooked Rodriguez's morbid obesity when he specifically noted it as a severe impairment and when it was noted in many of the records he considered.

The regulations and the Social Security Ruling require the ALJ to consider in formulating the RFC that the combined effects of obesity with other impairments may be greater than might be expected without obesity. SSR 02-1p, ¶ 8. Here, while the ALJ was not explicit in his consideration of obesity, he did explicitly and carefully analyze Rodriguez's ability to perform work. Moreover, he considered all those impairments that may be exacerbated by obesity.

First, the ALJ considered Rodriguez's foot and ankle problems. He recognized that Rodriguez fractured his heel in 2009 and exhibited problems over

the next several years. (Tr. 16–17.) However, the ALJ noted that by April 2018 Rodriguez was complaining of foot pain "after doing a lot of walking." (Tr. 17.) The ALJ noted that Rodriguez had a calcaneal spur on his left foot and was recommended conservative treatment. *Id.* The record the ALJ cites shows that Rodriguez was prescribed stretching exercises and icing for plantar fasciitis and his heel spur. (Tr. 1185.) His doctor also discussed supportive shoes and injection therapies. *Id.* The treatment notes from that same visit state that "[patient] is here for podiatry follow up . . . he stated he did a lot of walking this weekend." (Tr. 1184.)

The ALJ then considered Rodriguez's CTS and noted that the record showed "few physical findings associated with this impairment." (Tr. 17.)

The ALJ considered Rodriguez's heart problems as well. He noted Rodriguez was hospitalized and referred to the emergency room for heart problems in 2012. (Tr. 17.) He was prescribed Coumadin. *Id.* On August 8, 2012, his heart exam showed "regular rate and rhythm, S1, S2 normal, no murmur, click, rub, or gallop." (Tr. 371.) The ALJ noted that his cardiac markers were normal in 2013 and that he continued to be stable on Coumidin through 2016. (Tr. 17.) The record confirms these conclusions. (Tr. 750–53, 764–66, 783–85, 937–39, 968–70.)

The ALJ considered Rodriguez's diabetes and noted that the record showed that it was "generally controlled." (Tr. 17.) The ALJ explained that in February 2013 Rodriguez's physician stated that "[Rodriguez's] diet and appetite were not well

controlled, his blood sugars were higher, and he was not on insulin." (Tr. 17–18.)

However, the ALJ noted that the record showed that Rodriguez experienced no

complications associated with his diabetes. *Id.* In April 2015, Rodriguez complained

that his blood sugar was high and stated that "he was trying to eat healthy, but he

was unable to exercise because of his foot." *Id.* By April 2019, Rodriguez was

denying having any problems and had a normal physical examination. (Tr. 18.) The

clinical notes from an April 25, 2019, visit stated that "[patient] is doing well at this

time with excellent adherence to current mediation." (Tr. 1384.)

The ALJ also considered Rodriguez's mental impairments. He noted that

Rodriguez was diagnosed with depression and a mood disorder. (Tr. 18.)  The ALJ

noted that in August 2016, Rodriguez was able to drive himself to his mental status

exam. *Id.* The ALJ noted that Rodriguez complained of his depression and chronic

pain associated with his foot, but the clinical notes also indicated that he was still

able to "shower and perform activities of daily living independently." *Id.*  The record

the ALJ cited states that "Rodriguez arrived thirty minutes early to his appointment,

independently completed his paperwork, and walked unassisted." (Tr. 1159.) The

record also shows that Dr. Melody Jones, Ph.D., noted that "Rodriguez has the

ability to understand, carry out, and remember instructions for simple one-two step

instructions, but not for complex instructions. He will have difficulty with sustained

attention and concentration, remembering duties, and persisting in a fast-paced work

environment. He is unable to deal with normal pressures in a competitive work setting." (Tr. 20, 1164.)   The ALJ assigned little weight to Dr. Jones's opinion because she was not his treating physician, she examined Rodriguez only on one occasion, she did not have access to recent objective medical evidence, and her opinion was at odds with subsequent objective medical evidence. (Tr. 20.)

The ALJ noted that in January 2019, Rodriguez presented for an initial psychiatric evaluation.  (Tr. 18.) He complained about depression, sleep issues, and decreased energy, but he denied any homicidal or suicidal thoughts. *Id.* He was prescribed Zoloft, but later switched to Wellbutrin because Zoloft "was making him sleepy" and caused other side effects. (Tr. 20.)  The ALJ noted that by April 2019, Rodriguez stated that he was doing much better, his mood was improving, and he was interacting more.  (Tr. 19.) Rodriguez also indicated he had foot pain because he worked in his yard over the weekend. *Id.* The ALJ noted that the following month, Rodriguez had a normal mental status examination, improved mood, but mild depression attributed to the anniversary of his mother's death. *Id.*  Records of follow-up visits showed that Rodriguez continued to experience improvement in his mood. *See, e.g.* Tr. 1436 (noting that Rodriguez stated on June 13, 2019, that he was feeling better but was stressed about his upcoming hearing); Tr.1431 (noting that Rodriguez stated on August 1, 2019, that he was feeling better and that his new medication

worked); Tr. 1427 (noting that Rodriguez stated on September 5, 2019, that he was feeling better but was stressed about his upcoming social security hearing).

Even though the ALJ failed to specifically analyze Rodriguez's obesity in formulating the RFC, Rodriguez has not shown that he was prejudiced from that failure. *See Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2002) (requiring "a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision"). Rodriguez can establish prejudice "by showing that the additional considerations 'might have led to a different decision.'" *Mettlen v. Barnhart*, 88 F. App'x 793 (5th Cir. 2004) (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

Although Rodriguez's motion suggests several ways in which obesity might generally aggravate other ailments, he has presented no evidence that his obesity had such an effect on him. (D.E. 16 at 7–8.)  He does not cite to any evidence in the record indicating that obesity impacted his ability to perform work-related functions or that he suffered any functional limitations beyond those recognized in the RFC because of obesity. *Id.*

During his hearing, Rodriguez testified as to how much he weighed at the time of the hearing and how much weight he gained due to his depression. (Tr. 44–45.)

Rodriguez's attorney did not ask him or the VE any questions about the effect obesity had on any of his other impairments or his ability to work. (Tr. 45–48, 55.)

There is no evidence that obesity imposed any limitations on Rodriguez's functional capacity beyond those set forth in the RFC. There is also no indication that the ALJ would have reached a different conclusion had he discussed obesity in the decision. As a result, the ALJ's failure to discuss obesity in his decision was harmless.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform his previous work by comparing the RFC with the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(f) (2016); *see also Perez*, 415 F.3d at 462. If the claimant can perform past work, the claimant is not disabled. *See Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(f)); *see also* 20 C.F.R. § 416.920(f) (2016). If not, the ALJ proceeds to step five. 20 C.F.R § 416.920(g)(1) (2016).

At this step, the ALJ found that Rodriguez could not perform his past relevant work as a retail assistant manager. (Tr. 20.) The VE testified that given Rodriguez's RFC, he could not return to his past relevant work. *Id.* Thus, the ALJ appropriately determined that Rodriguez was unable to perform past relevant work. Rodriguez does not dispute this finding.

## F. Step 5

At step five, the ALJ determines whether the claimant can perform any other work existing in significant numbers in the national economy by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); see also 20 C.F.R. § 416.920(g)(1) (2016). If so, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); see also 20 C.F.R. § 416.920(g) (2016).

The ALJ found that Rodriguez could perform jobs that exist in significant numbers in the national economy. (Tr. 21.) The ALJ relied on hearing testimony of the VE that an individual Rodriguez's age, education, work experience, and RFC would be able to work as a janitor, linen clerk, and laboratory equipment cleaner. (Tr. 21–22.) Because the VE's testimony was based on a hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, it is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination).

The court's review of the record confirms that substantial evidence supports the ALJ's step-five finding.

## 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's findings at each sequential step. The ALJ's decision denying Social Security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's cross-motion for summary judgment be GRANTED, and Plaintiff's motion for summary judgment be DENIED.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on November 29, 2021.

_____
Peter Bray
United States Magistrate Judge

20